**ST. LOUIS–SAN FRANCISCO RY. CO.**

**v.**

**STATE.**

No. 34271.

Supreme Court of Oklahoma.

Nov. 10, 1953.

Rehearing Denied March 23, 1954.

Application for Leave to File Second
Petition for Rehearing Denied
April 6, 1954.

E. G. Nahler, St. Louis, Mo., Satter-field, Franklin & Harmon, Oklahoma City, for plaintiff in error.

Houston Bus Hill and Wayne W. Bayless, Oklahoma City, for defendant in error.

James G. Welch, Oklahoma City, for corporation commission.

W. Otis Ridings, Norman E. Reynolds, and Norman E. Reynolds, Jr., Oklahoma City, Amici Curiae.

O'NEAL, Justice.

This is an appeal from an order of the Corporation Commission of Oklahoma, entered on the 11th day of February, 1949, requiring the St. Louis-San Francisco Railway Company and the Frisco Employees' Hospital Association to furnish hospital facilities and medical services to injured or sick employees of the Railway Company employed by it in Oklahoma.

We will refer to the plaintiff in error, the St. Louis-San Francisco Railway Company, as the Frisco, and the defendant in error, State of Oklahoma, as the Commission and the Frisco Employees' Hospital Association as the Hospital Association.

The Hospital Association is not and has never been a party of record to these proceedings. The Commission's order, however, runs against the Hospital Association, as well as the Frisco, jointly. By permission of this court the Hospital Association has filed its brief Amici Curiae in which it suggests that it was not a party to the proceedings before the Commission and that, therefore, the order against it is void for want of jurisdiction. The record discloses that the Frisco and its trustees were sole respondent to the proceedings before the Commission.

The Hospital Association is a Missouri Corporation and was organized with the object of providing medical and surgical attention and hospitalization to its members who are also employees of the Frisco. The Hospital Association's By-Laws provide that dues and assessments be collect-

ed by means of payroll deductions from wages due the Frisco employees. During the year 1945, the Hospital Association's members contributed to the Association the sum of $406,084.92 and in the year 1946, the sum of $442,355.92, and Frisco contributed to the fund for each of said years, the sum of $6,000.00.

The proceeding before the Commission was instituted under the provisions of sections 111, 112 and 113 of Title 17 O.S.1951, sections 1, 2 and 3, chapter 30, S.L.1915. Section 111, generally, provides that all railroad companies operating a line of railroad in the State of Oklahoma, or any association, or corporation, which are collecting fees or sums of money from the employees of such railroad association, or corporation, for the purpose of providing or maintaining hospital service for such employees when sick or injured, shall upon the order of the Corporation Commission, provide adequate hospital facilities within the State of Oklahoma for its employees who may be injured or become sick, by either contracting with hospitals in certain cities to furnish the facilities, or by erecting, operating and maintaining a 45 bed hospital in the State.

Section 112 confers jurisdiction upon the Commission to make investigations and by order require all railroad companies, associations, or corporations, operating within the State, to establish such hospital services as the Commission may deem adequate for the prompt and proper relief and medical attention of such employees.

Section 113 provides that the Commission may make the investigations upon its own motion or upon complaint of any employee of the railroad company.

Whether the Frisco collects the assessment or dues from its employees as the Commission found, or whether the dues and assessments were collected by the Hospital Association through authorized payroll deductions is, in our view, immaterial, as section 111 authorizes the Commission to order adequate hospital services within the State in cases where either the railroad or the association had theretofore collected sums of money from the employees of the

railroad companies, or association members, for the purpose of maintaining hospital services.

In view of the Hospital Association's contribution to the fund for the years 1945 and 1946 in the sum of $848,440.86 as against the Frisco's contribution of $12,000.00 for said years, and the further uncontradicted evidence as to the Hospital Association's dominant control and management of the Hospital Association and its service, we are of the view, and so hold, that the Hospital Association was entitled to notice and a hearing before the Commission prior to the promulgation of the order against it.

The respondent, Frisco, in its brief, concedes that the order had to run against both the Frisco and the Hospital Association for the reason that "The relations of the Frisco and the Association were so interwoven that no order could have been made against only one and at the same time afford relief from the abuses complained of."

The Order of the Commission of the 11th day of February, 1949 reads:

"It Is Therefore Ordered by the Corporation Commission of the State of Oklahoma as follows:

"(1) That the Respondent Frisco Railway Company and the Hospital Association be and they are hereby required to provide adequate hospital facilities and medical services to the injured or sick employees of the Frisco in Oklahoma, and the following would, in the opinion of the Commission, be adequate:

"(A) The members of the Hospital Association may select physicians of their own choosing when they find that the Association doctor is not available.

"(B) Arrange with hospitals in the following cities or terminals on the Frisco line in Oklahoma for a certain number of Ward Beds and Private Beds, more specifically designated after each city:

(1) Oklahoma City—10 Ward Beds and 5 Private Beds.

(2) Tulsa—10 Ward Beds and 5 Private Beds.

(3) Enid—6 Ward Beds and 3 Private Beds.

(4) Hugo—3 Ward Beds and 2 Private Beds. or in the alternative provide for a hospital in the State of Oklahoma, properly equipped and staffed to *accomodate* 45 patients. * * * "

The Commission's order cannot be sustained, as against the Hospital Association, for the reason the Commission did not have jurisdiction over the Association. The Commission did not comply with the provisions of section 18, article 9 of the State Constitution. That section, as far as here applicable, provides:

"Before the Commission shall prescribe or fix any rate, charge or classification of traffic, and before it shall make any order, rule, regulation, or requirement directed against any one or more companies by name, the company or companies to be affected by such rate, charge, classification, order, rule, regulation, or requirement, shall first be given, by the Commission, at least ten days' notice of the time and place, when and where the contemplated action in the premises will be considered and disposed of, and shall be afforded a reasonable opportunity to introduce evidence and to be heard thereon, to the end that justice may be done, and shall have process to enforce the attendance of witnesses". * * *

This section also provides that notice may be given by publication if the Commission desires to enter a general order, not directed against any specific company by name. The order against the Hospital Association is vacated.

The order of the Commission is challenged by Frisco on the ground that the Commission did not have jurisdiction of the subject matter set forth in the complaint. It is asserted that the only time that the Commission does have jurisdiction to act in a matter of this sort, which is a dispute between the Hospital Association and certain employees of Frisco, would

be when both parties had requested the Commission to act in a settlement of the dispute.

Reliance is made upon article 9, § 18 of the Constitution of Oklahoma, which provides, in part, as follows:

"Upon the request of the parties interested, it shall be the duty of the Commission, as far as possible, to effect, by mediation, the adjustment of claims, and the settlement of controversies, between transportation or transmission companies and their patrons or employees."

In Missouri-Kansas-Texas R. Co. v. State, 182 Okl. 134, 76 P.2d 884, the Commission was passing upon an application of the railroad company to discontinue certain service stations. Jurisdiction of the Commission was challenged upon the assertion that the order, if granted, would breach certain contract rights and relations between the railroad company with its employees. In that case we expressly declined to discuss the intra-state aspect of the dispute raised by the employees of the railroad company, or to discuss or define the activity of the Federal or State Governments; therefore, that decision does not support Frisco's contention that under 45 U.S.C.A. § 157, the Federal Government had pre-empted the legislative field depriving the Commission of jurisdiction over the subject matter then before it.

Frisco's reliance upon the language contained in subdiv. (6), § 152, 45 U.S.C.A. as indicating exclusive jurisdiction in the Federal Mediation Board cannot be sustained, for the reason that that section is confined to disputes between a carrier and its employees arising out of grievances or out of the interpretation or application concerning rates of pay or working conditions, in which cases the carrier and employees shall confer, upon proper notice, in an attempt to settle such disputes.

Frisco contends that chapter 30, Session Laws 1915, Title 17 O.S.1951 §§ 111, 112 and 113 is void for the reason that the legislature did not amend the Constitution as provided in section 35 of article 9, which reads as follows:

"After the second Monday in January nineteen hundred and nine, the Legislature may, by law, from time to time, alter, amend, revise, or repeal sections from eighteen to thirty-four, inclusive, of this article, or any of them, or any amendments thereof: Provided That no amendment made under authority of this section shall contravene the provisions of any part of this Constitution other than the said sections last above referred to or any such amendments thereof."

It is argued that under section 35, supra, the legislature has the right to repeal, alter, revise, or amend sections 18 to 34, inclusive, of article 9 of the Constitution, but that it does not grant the legislature any authority to enlarge the powers granted by the people of the State as then expressed in the Constitution. In the alternative, it is asserted that if section 35, supra, is broad enough to permit the legislature to enlarge upon the grant of powers in the Constitution, the legislature, by the enactment of chapter 30, Session Laws 1915, §§ 111, 112 and 113 of Article 17, did not so amend the Constitution.

Our opinion in Oklahoma Cotton Ginners' Ass'n v. State, 174 Okl. 243, 51 P.2d 327, 332, is relied upon to sustain this proposition. In the Cotton Ginners' case one question involved was the jurisdiction of the Corporation Commission over certain gins as provided by chapter 176, Session Laws 1915, as amended (sections 3676–3683, O.S.1931) under the authority of section 19, of article 9, of the Constitution. The pivotal question there presented was whether the court on appeal from an order of the Commission was acting in a legislative or judicial capacity. For the reasons there stated, we held that the court was invested with judicial power only.

In answer to the State's contention that the Act was amendatory of sections 18 or 19, article 9 of the Constitution, we said:

"But with this contention we cannot agree. In the first place, if chapter 176, supra, is amendatory of sections 18 to 34 of article 9 of the Constitution, it is so only by implication, and amendments of the Constitution by implication are not favored. Adams v. City of Hobart, 166 Okl. 267, 27 P.2d 595; Hopkins v. Anderson (Cal.App.) 12 P.2d 1043; City of Klamath Falls v. Oregon Liquor Control Comm., 146 Or. 83, 29 P.2d 564; Cooley, Constitutional Limitations, vol. 1 (7th Ed.) p. 217. It would seem that the Legislature, if it intended to amend the fundamental instrument on which the government of this state was erected, would have expressed itself in no uncertain terms as to the character of its action."

The legislature in the enactment of the Cotton Gin Statute, chapter 176, Session Laws 1915, made no reference to sections 18 or 19 of article 9 of the Constitution.

The Cotton Gin Act under section 4, provided that the Commission shall have the same powers on matters relating to the performance of public duties, and unjust discrimination, as is exercised by the Commission as to transportation and transmission companies and also the same power to fix rates, rules and charges.

Section 5 of the Cotton Gin Act provides that orders of the Commission fixing rates, charges, rules and regulations may be reviewed, on appeal by the Supreme Court as orders relative to transportation and transmission companies.

The legislature in 1925 enacted legislation declaring the manufacture of ice to be a public business, chapter 147, Session Laws of 1925. That Act made no reference to sections 18 to 35 of art. 9 of the Constitution. The Act generally provides for the issuance of license by the Commission as a condition precedent to engaging in the manufacture and sale of ice.

Section 5 of the Act granted the Commission the same power as exercised by them over transportation and transmission companies.

Section 6 provides that the Commission's order fixing rates, charges, rules and regulations may be reviewed upon appeal. This Act was declared unconstitutional. See New State Ice Company v. Liebmann, 285 U.S. 262–311, 52 S.Ct. 371, 76 L.Ed. 747.

850

The legislature in 1913 declared that the term "public utility," should apply to companies conveying gas by pipe line for heat or light; and the conveyance of electric current for light, heat or power. The Act provided that the Commission fix and establish rates and charges. Chapter 93, Session Laws 1913.

Our reference to the legislative enactment of the cotton gin, ice manufacture, gas, electric and water transportation and transmission companies illustrates that the legislature did not deem it necessary to exercise the power and authority vested in it under the Constitution to amend the Constitution by an amendatory clause to be set forth as a part of the Constitution, but have done so by statutory enactment in the form of general law.

■ It must be conceded that in the enactment of Title 17 O.S.1951 §§ 111, 112 and 113, the Hospital Facility Act here involved is neither an alteration, amendment, revision or repeal of any existing provision of sections 18 to 34 of article 9 of the Constitution, but, on the contrary, covers a subject wholly foreign to the enumerated powers set forth in the Constitution. It is clear to us that under section 18, article 9 of the Constitution, the Commission is irrevocably vested with power and authority subject to review on appeal to fix rates, charges and classifications of traffic for transportation and transmission companies, which vested powers are subject to regulations by law; that the legislature is impotent by legislation to deprive the Commission from the exercise of such enumerated power but may, by general law, authorize the mode, method and procedure governing their enforcement.

We are fortified in this conclusion for the reason that section 19 of article 9 of the Constitution provides that the Commission may be vested with such additional powers, and charged with such additional duties as the legislature may, from time to time, prescribe by law (not inconsistent with this Constitution). It will be observed that section 19 of article 9 of the Constitution enumerates the additional powers and duties which the legislature may prescribe by general law, as follows:

(a) The visitation, regulation, or control of corporations.

(b) Prescribing and enforcing rates and charges.

(c) The assessment of the property of corporations.

(d) Appraisement of the corporation's franchises, for taxation.

(e) The investigation of the subject of taxation generally.

These enumerated additional powers not being new powers, but merely extensions or broadening of existing powers, may be established by the legislature and likewise may be altered, amended, revised or repealed by general laws as provided in section 35 of article 9 of the Constitution.

■ The Act here involved, Title 17 O.S.1951 §§ 111, 112 and 113, requiring a railroad company to furnish hospital facilities to its employees cannot be construed as within the powers referred to in either sections 18 or 19 of article 9 of the Constitution, and, therefore, the legislation in its present form is neither an alteration, amendment, revision or repeal of any of the provisions of sections 18 to 34 as authorized under section 35 of article 9 of the Constitution and therefore cannot be constitutionally sustained. If amendment of the Constitution is desirable to grant new or additional powers, the amendment should be expressed as a constitutional amendment and incorporated in the instrument as such, that it may be readily so understood and given that respect and consideration which constitutional provisions are entitled to in the administration of the law.

As we said in the Oklahoma Cotton Ginners' case, supra [174 Okl. 243, 51 P.2d 332], "It would seem that the Legislature, if it intended to amend the fundamental intrument on which the government of this state was erected, would have expressed itself in no uncertain terms as to the character of its action."

We are further of the opinion that art. 17 §§ 111, 112 and 113 cannot be sustained

on Constitutional grounds for the reason that the Act does not relate to any public duty of the Railroad Company but is confined to present contractual relations of Frisco with its employees. Section 18 of art. 9 of the Constitution specifically provides that the Commission is empowered to regulate and control all transportation and transmission companies in matters relating to the performance of their public duties, over the matters therein enumerated. That the Commission shall, by rule and regulation, require said companies to establish and maintain such public service and facilities, as may be reasonable and just.

■ Section 19 of art. 9 of the Constitution, vesting in the Commission the additional powers therein enumerated, when read in connection with section 18, must be construed to mean obligations of the corporations with reference to their public duties, for the section expressly states that the Commission may be vested with such additional powers and charged with such other duties (not inconsistent with the Constitution). The Statute here drawn in dispute requires Railroad companies operating lines of Railroad in the state to furnish adequate hospital facilities within the State, for its employees who may be injured or become sick.

■ It will be observed that this duty is imposed upon the Railroad whether the injury or the sickness arises out of or in the course of the employment. There may or may not be a moral obligation on the part of the Railroad Company under certain emergencies to render medical assistance to an injured or sick employee, but under constitutional limitations its property cannot be subjected to a private use without due process of law. Art. 2, § 7 of the Oklahoma Constitution.

■ The Corporation Commission has such jurisdiction and authority only as is expressly or by necessary implication conferred upon it by the Constitution. Atchison, T & S. F. Ry. Co. v. Corporation Commission of State of Oklahoma, 68 Okl. 1, 170 P. 1156; Chicago, R. I. & P. Ry. Co. v. State, 158 Okl. 57, 12 P.2d 494.

In Smith v. Corporation Commission, 101 Okl. 254, 225 P. 708, we held that the Corporation Commission's jurisdiction is limited to those controversies wherein the rights of a public utility and the patrons thereof (the general public) are involved. It has no power or jurisdiction to adjudicate differences between private litigants or purely private matters between a utility and a citizen.

The dispute which resulted in the filing of the complaint before the Commission, arose out of a controversy between certain employees of the Railroad Company with the Hospital Association, upon claims disallowed by the Hospital Association upon the ground their payment was not authorized under the Association's By-Laws. Clearly, that dispute was not of such a nature that it could be construed as affecting the Railroad relations or its public duty as expressed in the Constitution. The order requires the Railroad Company and the Hospital Association to arrange with hospitals in Oklahoma in four named cities for 29 ward beds and 15 private beds, or provide for a hospital in Oklahoma, properly equipped and staffed to accommodate 45 patients. It also provides that Frisco shall pay its proportionate part of the expense of such facilities; and that Frisco shall delete from its present employment contracts the provisions requiring its employees to become members of the Hospital Association, or go to St. Louis for hospitalization. Lastly, it provides that the Hospital Association shall not disclose any confidential information of its patients, employees of Frisco, to Frisco representatives, without the written consent of such patients.

These requirements sufficiently demonstrate that the matters which it sought to resolve were all of a private nature affecting employment relations with the Railroad, and were clearly beyond its Constitutional authority to enforce.

For these reasons we hold that the order of the Commission should be and it is hereby vacated.

HALLEY, C. J., JOHNSON, V. C. J., and CORN and WILLIAMS, JJ., concur.