## KANSAS CITY SOUTHERN RAILWAY CO. v. CITIZENS OF WESTVILLE.

No. 28135.   Nov. 15, 1938.

Rehearing Denied Dec. 6, 1938.

Jos. R. Brown, Rainey, Flynn, Green & Anderson and James B. McDonough, for plaintiff in error.

J. B. A. Robertson and S. J. Gordon, for defendants in error.

DAVISON, J.   The citizens of the incorporated town of Westville, Okla., filed their petition with the Corporation Commission, requesting the commission to require the Kansas City Southern Railway Company to open Cherry street in said city where same crossed the right of way and track of said railroad company, theretofore closed by an ordinance passed by the board of trustees of the town of Westville, and to require the railroad company to maintain such street crossing.

The respondent, the Kansas City Southern Railway Company, hereinafter referred to as defendant, filed its plea and amended plea to the jurisdiction of the Corporation Commission, hereinafter referred to as the commission, alleging that the commission is without jurisdiction to hear and determine the matters involved in the complaint or to grant the relief prayed for.

The plea to the jurisdiction was taken under advisement and the matter was heard on its merits. The plea to the jurisdiction was overruled and an order promulgated requiring the opening of Cherry street and other streets to public travel and the placing of the streets in the same condition as they existed prior to the time they were closed by ordinance. The defendant has appealed from the order.

The first contention presented is that the commission lacked jurisdiction to hear the petition of the citizens of Westville.

This contention is based upon the alleged facts that, on August 25, 1930, the city of Westville agreed to vacate certain street crossings over defendant's tracks if defendant would construct a depot and make improvements of agreed specifications; that Westville duly passed an ordinance vacating Cherry street crossings and others; that in consideration of the vacation of said

crossings, the defendant spent a large sum of money in building a new station and rearranging its tracks; that when the street crossings were vacated the land contained there reverted to the defendant.

The defendant further contends that the ordinance thereafter passed by the board of trustees of Westville, reopening Cherry street and other streets, and any order of the commission upholding same, would be taking respondent's property without due process of law; that to open Cherry street over defendant's right of way would require it to cut its freight trains on the passing track, slow down its operation, interfere with and reduce the usefulness of its steam track and increase hazards to the traveling public; and that Cherry street was not proper or safe for railroad crossing.

In support of its contention, the defendant has cited various authorities, some of which we will review here.

In A., T. & S. F. Railway Co. v. City of Shawnee (8 C. C. A.) 183 Fed. 85, the city of Shawnee was enjoined from enforcing an ordinance opening a street on the railroad station grounds. A division point had been established in Shawnee partly in consideration of the city granting right of way over certain streets and vacating other streets for station grounds. There was no condemnation proceeding to open the streets and the court enjoined the city from attempting to enforce the ordinance. The facts in that case bear much similarity to the facts in the instant case. The decision was rendered on October 12, 1910.

In St. L.-S. F. Railway Co. v. Corporation Commission, 35 Okla. 166, 128 P. 496, this court held that the commission had no power to require a railroad company to install a crossing "where no highway or crossing had been lawfully established and opened over the right of way of the railroad." This decision was dated December 3, 1912. To the same effect are the decisions of this court in St. Louis-S. F. Railway Co. v. Love, 29 Okla. 523, 118 P. 259, and Atchison, T. & S. F. Railway Co. v. State ex rel. West, Atty. Gen., 40 Okla. 411, 138 P. 1026.

These decisions by this court and the federal court, cited herein, were prior to the date of the passage of chapter 53, Session Laws 1919, under which exclusive jurisdiction over public highway road crossings was conferred upon the Corporation Commission.

Section 3658, O. S. 1931, a portion of said chapter, provides:

"The Corporation Commission is given full jurisdiction over all public highway crossings, where same cross steam or electric railroads or railways within the state of Oklahoma."

A portion of the same chapter is brought forward as section 3661, O. S. 1931, which provides:

"The Corporation Commission shall have exclusive jurisdiction to determine and prescribe the particular location of highway crossings, for steam or electric railways, the protection required, to order the removal of all obstructions as to view of such crossings, to alter or abolish any such crossings, and to require, where practicable, a separation of grade at any such crossing, heretofore, or hereafter established."

This court has given literal interpretation of these sections of the statute vesting exclusive jurisdiction upon the Corporation Commission in altering or abolishing such crossings. Missouri, K. & T. R. Co. v. State et al., 107 Okla. 23, 229 P. 172; Missouri, K. & T. R. Co. v. State, 82 Okla. 221, 200 P. 208.

In the instant case, the streets had been established over and across the right of way and tracks of the defendant company and such rights existed on the 25th day of August, 1930, when the town of Westville attempted by ordinance to vacate and close the street crossings over the defendant's right of way and tracks. The authorities cited which interpreted the right and jurisdiction of the Corporation Commission prior to the passing of chapter 53, Session Laws 1919, are not authorities in determining the issues here presented. The authorities cited by the defendant wherein this court was dealing with the question of the right and authority of the commission to force the establishing of highway and street crossings over the railroad right of way and tracks where no such right of way and street crossings had ever been established are not authorities in determining the questions here submitted. In City of Ardmore v. Chicago, R. I. & P. R. Co., 172 Okla. 373, 45 P.2d 540, this court held:

"The Corporation Commission of the state of Oklahoma has full jurisdiction over all public highway crossings where same cross steam or electric railroads or railways within the state of Oklahoma."

And said:

"When a highway is once established, the location of the crossing, its construction and maintenance or alteration clearly comes within the jurisdiction of the Corporation

Commission as provided by the Act of April 2, 1919."

The many authorities cited relative to the rights of a municipality to pass ordinances to close and vacate streets, and the granting of franchises and other kinds of contracts which may be entered into between a municipality and a railroad company or other corporation, and the impairment of such contracts are not controlling in determining the question here presented. If the town of Westville was without authority to close and vacate portions of certain streets passing over the right of way and tracks of the defendant railroad company without invoking any authority and assistance from the commission, we must conclude that such street crossings were improperly and unlawfully closed. If the streets were closed without authority, they can be reopened by those in authority. The Corporation Commission, having such authority, had jurisdiction to hear the petition of the citizens of Westville and to determine the merits of same.

It is next contended that the petitioner, the town of Westville, is estopped from seeking any relief and from repudiating the contract entered into in enacting the ordinance inducing the defendant company to make expensive improvements in consideration of the town of Westville closing certain street crossings.

Under the provisions of section 26, article 9, of the Constitution of Oklahoma, the defendant railroad company was required to provide and maintain at their various stations adequate depots. There is nothing in the testimony nor the records to the effect that the depot so constructed was of extra quality of kind and at an expense disproportionate to depots constructed in other towns of equal population and volume of business transacted. The mere fact that the defendant company promised to build and did build a depot pursuant to the terms of the ordinance did not furnish such a legal consideration in support of the contract ordinance as would authorize the withdrawal from the commission's control the regulation of the grade crossings involved and the abolishing of same without the consent of the commission, and no rule of estoppel could apply. In City of Stillwater v. Lovell, 159 Okla. 214, 15 P.2d 12, this court held in syllabus 2 that:

"If the public interest is not the motive which prompts the vacation of a street, whether partial or entire, the act of vacation is an abuse of power, and especially is it a gross abuse of power if it is authorized without reference to the rights of the public and merely that the convenience of a private individual may be subserved. * * *"

And in syllabus 4 that:

"A municipal corporation has no power, without express legislative authority, to license a private individual to make a permanent use of any portion of a street for any private purpose that will interfere with the legitimate public use of the street for travel notwithstanding some space is left for the passage of the public."

In the case of Northern Pacific Railway Co. v. State of Minnesota ex rel. City of Duluth, 208 U. S. 583, 52 L. Ed. 630, 28 S. Ct. 341, the court had under consideration a contract between the municipality and the railroad company, which, if of binding force and effect, would relieve the railroad company from making certain improvements within the right of way and upon a viaduct. To require the railroad company to make the improvements within the time named by the municipality was to require the railroad to incur expenses for things which the city had expressly contracted to relieve it from during the certain period mentioned. In speaking of the right to compel railroads, without compensation, to construct and maintain suitable crossings at streets extended over its right of way, after the construction of the railroad, that court said:

"There can be no question as to the attitude of this court upon this question, as it has been uniformly held that the right to exercise the police power is a continuing one; that it cannot be contracted away, and that a requirement that a company or individual comply with reasonable police regulations without compensation is the legitimate exercise of the power, and not in violation of the constitutional inhibition against the impairment of the obligation of contract. * * * It is likewise thoroughly established in this court that the inhibitions of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process, or of the equal protection of the laws, by the states, are not violated by the legitimate exercise of legislative power in securing the public safety, health, and morals. The governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulations in particulars essential to the preservation of the community from injury."

Speaking further of restricting the regulation of the police power, the court said:

"But the exercise of the police power cannot be limited by contract for reasons of

public policy; nor can it be destroyed by compromise; and it is immaterial upon what consideration the contract rests as it is beyond the authority of the state or the municipality to abrogate this power so necessary to the public safety."

It is contended that there was a failure of proof to show convenience and necessity for the crossing.

The commission found, in part:

"* * * That since said time certain of said streets have been reopened by common consent, but that Cherry street is now closed and the commission finds from the evidence of witnesses that the public necessity and convenience of the people of the town of Westville require the opening of said Cherry street."

It is shown that the tracks of the defendant company run through the principal portion of the town of Westville. In the petition filed with the commission it is alleged that Cherry street was the street adjoining the city park and the most natural thoroughfare connecting the town of Westville with the highway leading from the town to the northwest; that the closing of Cherry street created an inconvenience and fire hazard. The testimony tended to show that the closing of Cherry street had hampered convenience in travel to and from the canning factory. The commission heard the testimony and this court cannot say that the testimony was not sufficient to sustain the finding of the commission. The finding of the commission is presumed to be reasonable, just, and correct as to the facts found, and the burden is on the defendant to show the contrary. United States Express Co. v. State et al., 47 Okla. 656, 150 P. 178.

The attention of the court is called to the fact that other streets than Cherry street were required to be reopened by the finding and order of the commission. The commission found that the streets had never been legally closed, and as a matter of law were open.

The defendant railroad company will not be restricted herein from filing proper request with the commission for authority to abolish other grade crossings involved.

The order of the Corporation Commission is affirmed.

OSBORN. C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, GIBSON, HURST, and DAVISON, JJ., concur.