The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. 59056.

Supreme Court of Oklahoma.

May 22, 1984.

Hugh D. Rice, Rainey, Ross, Rice & Binns, Oklahoma City, for appellant.

Eddie M. Pope, Patrick D. Shore, Asst. General Counsels, Judith A. Geeson, Oklahoma Corp. Com'n, Oklahoma City, for appellee Corp. Com'n.

Spencer W. Lynn, Chief, Legal Div.· and Special Counsel, Dept. of Transp., Oklahoma City, for appellee Dept. of Transp.

ALMA WILSON, Justice.

The central issue on appeal is whether the Corpora-Commission had authority to issue Order 222509 which granted the Oklahoma Department of Transportation's request to designate two grade crossings with signal devices at Farrall Avenue in Shawnee, Oklahoma, and to direct the Atchison, Topeka, and Santa Fe Railroad, Appellant, to construct and maintain such crossings. The order made Appellant's performance contingent upon the State acquiring the right of way either through amicable settlement or condemnation proceedings. Both the Corporation Commission and the Department of Transportation have filed answer briefs.

Appellant raises the following propositions of error: (1) the order is not within the express or implied jurisdiction of the Commission; (2) assuming jurisdiction, the Commission has no authority under either 17 O.S.1981, §§ 81–84, or 66 O.S.1981, § 128 to order the railroad to pay any of the costs of construction of the street crossing in question; and, (3) such order violates the due process clause of Art. 2, § 7 of the Oklahoma Constitution and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

I

The Corporation Commission asserted jurisdiction under the authority of 17 O.S. 1981, §§ 81, 82, and 84, and 66 O.S.1981, § 128. Title 66 O.S.1981, § 128 provides:

It shall be the duty of every railroad company or corporation doing business, or operating a line of railroad, within this state, to construct a crossing across that portion of its track, roadbed or right of way over which any public highway may run, and maintain the same unobstructed in good condition, for the use of the public ...

Title 17 O.S.1981, §§ 81 and 84 give the Corporation Commission full jurisdiction over all public highway crossings over railways and exclusive jurisdiction to determine and to prescribe the particular location of highway crossings for railways. Section 82 provides that the expense of construction and maintenance of public highway grade crossings shall be borne by the railroad or railway company involved.

Article 9, § 18 of the Oklahoma Constitution confers upon the Corporation Commission jurisdiction over all "transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties ..." The above-cited statutes were passed under the authority of Okl. Const. Art. 9, § 19 which provides that the "Commission may be vested with such additional powers, and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law, in connection with the visitation, regulation, or control of corporations ..."

The express mandates of all four statutes have been the settled law in Oklahoma for more than sixty years. In *Missouri, K. & T. Ry. Co. v. State*, 107 Okl. 23, 229 P. 172 (1924), the Court affirmed a Corporation Commission order for the construction of an underpass which had been challenged by the railroad on jurisdictional grounds. The Court found that Section 81 was properly enacted pursuant to Art. 9, § 19 and was to be literally interpreted. In *Chicago, R.I. & P. Ry. Co. v. State*, 131 Okl. 207, 268 P. 236 (1928), the railroad appealed from a Corporation Commission order requiring it to construct an underpass for a public highway crossing under its tracks. The Court upheld the order on the basis that public safety and convenience are good and sufficient reasons for the exercise of such powers.

Appellant asks us to overturn the established law via a strained construction of Art. 9, §§ 18, 19, and 35 of the Constitution. The starting point for its argument is *Atchison, T., & S.F. Ry. Co. v. Corporation Comm'n*, 68 Okl. 1, 170 P. 1156 (1918). There, the Court held the Commission lacked jurisdiction to order a railroad to build a subway crossing under its tracks because under Okl. Const. Art. 9, § 18 the Commission's jurisdiction was intended to be limited to matters pertaining to the performance of the railroad's duties as they related to the transportation of persons and property. The Court relied on the lack of claim or showing that the condition of said crossing in any way affected the safety of either persons or property while being transported on defendant's trains.

The Court, however, noted that the Legislature may extend and broaden the jurisdiction if it so desired, stating, "... if sufficient authority has not been conferred, this is one of those police regulations over which the Legislature has plenary power and may extend and broaden the jurisdiction of such officers' existing power, or may confer the same upon other officers at its will." The following year, 1919, the Legislature enacted 17 O.S. §§ 81–84 which explicitly gave the Commission full jurisdiction over railroad crossings.

Appellant claims, however, that the Legislature lacked the authority to give the Commission this jurisdiction without amending the Constitution pursuant to Okl. Const. Art. 9, § 35.[1] We disagree. Appellant ignores post-1919 decisional law to the contrary[2] and propounds that *Oklahoma Gas and Electric Co. v. Corporation Comm'n*, 543 P.2d 546 (Okl.1975), is controlling. In that case, the Court construed 17 O.S.1971, § 152, which extended the Commission's jurisdiction over public utilities. This statute, like §§ 81–84, was passed pursuant to Art. 9, § 19. The Court held that this statute must be construed to refer to the obligations of a corporation with reference to its public duties as provided in Art. 9, § 18 and, therefore, the Corporation Commission did not have the

---

1. Okl. Const. Art. 9, § 35 provides:
   After the second Monday in January, nineteen hundred and nine, the Legislature may, by law, from time to time, alter, amend, revise, or repeal sections from eighteen to thirty-four, inclusive, of this article, or any of them, or any amendments thereof: Provided, That no amendment made under authority of this section shall contravene the provisions of any part of this Constitution other than the said sections last above referred to or any such amendments thereof.

2. See, *Missouri, K. & T. Ry. Co. v. State, supra*, in which it was held that Chapter 14, Comp.St. 1921, § 3491, now 17 O.S.1981, § 81, was enacted by the Legislature pursuant to authority of Okl. Const. Art. 9, § 19.

power to regulate, supervise, and control the internal management of O.G. & E. to the extent it could prohibit the construction of a proposed project.[3] The Court noted that if additional powers are conferred upon the Corporation Commission which are inconsistent with the Commission's constitutional powers, compliance with the provisions of Art. 9, § 35 of the Constitution is mandatory. *Supra,* 543 P.2d at 546.

■■■■ Thus an extension of jurisdiction is proper under Art. 9, § 19 provided that the new authority does not extend beyond the public duties of the entity involved unless the Legislature amends pursuant to Section 35. *St. Louis-San Francisco Ry. Co. v. Corporation Comm'n, supra,* n. 3. Appellant concedes that the enactment of 17 O.S. § 81 merely extended the Commission's existing powers, however, it argues that the Commission has no jurisdiction to regulate matters pertaining to the convenience and safety of the motoring public. The issue is whether providing a safe public crossing relates to the railroad's public duties. We find that it does. *Chicago, R.I. & P. Ry. Co. v. Taylor,* 79 Okl. 142, 192 P. 349 (1920), presents a realistic view of the railroad's relationship to crossings in the context of public duty. The Court there stated that a railroad crossing is within itself a continuing source and warning of danger, and laws requiring the railroad to construct and maintain the crossings, laws providing the method of constructing crossings, and laws designating the extent of the duties imposed upon the railway company, fall peculiarly within the police powers of the state, because their purpose is not only to guard the public traveling on the highways from harm and injury, but to protect the railroad company, its employees, passengers, and property from injury. The construction of railroad crossings clearly falls within the public duty of railroads. *Supra,* 192 P. at 354. Title 17 O.S. §§ 81–84 were properly passed pursuant to Art. 9, § 19 of the Oklahoma Constitution.

## II

Appellant next argues that, assuming jurisdiction, the Commission has no authority to order the railroad to pay any of the costs of constructing the street crossings in question. It urges that the statutes conferring authority apply only where the railroad is constructed across a previously established highway.

This was the rule at common law before the adoption of statutes which placed the burden of constructing crossings on the railroad companies. Appellant again cites *Atchison, T. & S.F. Ry. Co. v. Corporation Comm'n, supra,* for the proposition that the railroad's public duty relates only to the transportation of passengers and freight and not to the safety of the motoring public. Appellant concludes that this is a definitive interpretation of public duty as used in Art. 9, § 18 and therefore the statutes in question must be limited to situations where a railroad crosses an established highway. We disposed of the issue of public duty in our discussion above. It makes no difference which thoroughfare was laid down first. In *Chicago, R.I. & P. Ry. Co. v. Taylor, supra,* the Court noted that the Legislature, in the exercise of its police powers, may impose on railroads the duty of maintaining highway crossings, although the street or highway was laid across the railroad subsequent to its construction.[4] The statutes in question have

---

3. Likewise in *St. Louis-San Francisco Ry. Co. v. Corporation Comm'n,* 268 P.2d 845 (Okl.1954), the Court noted the necessity of construing Art. 9, § 19 together with Art. 9, § 18. The Court held that a statute requiring the railroad to furnish hospital facilities to railroad employees unconstitutionally attempted to confer upon the Corporation Commission powers and duties not set forth in the Constitution in view of the fact that the act did not relate to any public duty of the railroad, but was confined to contractual relations of the railroad with its employees.

4. Appellant's reliance on *St. L. & S.F. Ry. Co. v. Love,* 29 Okl. 523, 118 P. 259 (1911), to support its position is misplaced. The central factual issue in that case was whether a highway had been legally opened and not whether the highway was laid out after the railroad. The Corporation Commission had ordered the railroad to construct a subway crossing at the intersection

been literally interpreted by this Court since their passage in 1919. *Missouri, K. & T. Ry. Co. v. State, supra.*

As we have already decided that the railroad does have a public duty to construct crossings, we find no merit in Appellant's argument that the statutes in question should be limited to the common law rule. The strained construction Appellant urges this Court to place on 17 O.S. 1981, §§ 81–84, 66 O.S.1981, § 128, and the applicable constitutional provisions, Art. 9, §§ 18, 19, and 35, is untenable. Constitutional provisions *in pari materia* with each other should be construed together with statutes on the same subject as part of a coherent system. *Cowart v. Piper Aircraft Corp.*, 665 P.2d 315 (1983).

## III

Appellant's third proposition is that requiring it to pay for crossings is a taking without due process of law because it arbitrarily takes its property at the eventual cost to railroad patrons with no direct benefit to the transportation of goods by the railroad.

The constitutionality of 17 O.S.1981, § 82, which requires the railroad to bear the expense of highway grade crossings has been established for a number of years.[5] Such expense is compensated for by the consequential reduction and prevention of loss, which otherwise an obstructed and unsafe highway crossing inflicts upon the railroad itself. *Chicago, R.I. & P. Ry. Co. v. Taylor, supra,* 192 P. at 354. In *Erie R. Co. v. Board of Public Utility Com'rs,* 254 U.S. 394, 41 S.Ct. 169, 65 L.Ed. 322 (1921), the U.S. Supreme Court held that the state may, in the exercise of the police power, compel a railroad company, without compensation, to construct and maintain suitable crossings at highways or streets extended over the right of way subsequent to the construction of the railroad, whether the crossing is at grade or below or above the tracks.

Appellant's equal protection argument is based on *Panhandle Eastern Pipeline Co. v. State Highway Comm'n,* 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090 (1935). In that case the Supreme Court considered a Kansas statute which authorized the state highway commission to order a pipeline company, at its own expense, to relocate and make certain other changes in its pipe and telephone lines in order to conform to plans adopted for new highways to cross the pipeline's right of way. Appellant claims that requiring the railroad to pay for a street crossing over previously existing railroad tracks is the same kind of taking as that in *Panhandle Eastern Pipeline Co.,* and that to impose such a burden on the railroad and not impose such a burden on a similarly situated pipeline denies the railroad equal protection of the law.

The differences between the two situations is more striking than the similarities. A pipeline company is not similarly situated with a railroad, as the railroad has public duties relating to the provision of safe crossings where a railroad intersects a public highway. The Supreme Court in the pipeline case reached this same conclusion. 294 U.S. at 619, 622, 55 S.Ct. at 566, 567.

Justice Holmes, in *Erie Ry. Co. v. Board of Public Utility Com'rs, supra,* after deciding that the right of states to regulate railroad crossings is a proper exercise of police power, commented:

> Grade crossings call for a necessary adjustment of two conflicting interests— that of the public using the streets and that of the railroads and the public using them. Generically the streets represent the more important interest of the two.

of its railroad and a new highway. The Supreme Court held that the Commission had no jurisdiction to require the construction of the crossing because the township had not yet paid the railroad for the right of way. The Court did not say that the highway must be established prior to the railroad before the Commission has jurisdiction. It merely said the highway must be established. *See also, Kansas City Southern Ry. Co. v. Citizens of Westville,* 184 Okl. 100, 89 P.2d 320 (1938).

5. *See, Protest of Downing,* 164 Okl. 181, 23 P.2d 173, 181 (1933), and authorities cited therein.

There can be no doubt that they did when these railroads were laid out, or that the advent of automobiles has given them an additional claim to consideration. They always are the necessity of the whole public, which the railroads vital as they are, hardly can be called to the same extent. Being places to which the public is invited, and that it necessarily frequents, the state, in the care of which this interest is, and from which, ultimately, the railroads derive their right to occupy the land, has a constitutional right to insist that they shall not be made dangerous to the public, whatever may be the cost to the parties introducing the danger. That is one of the most obvious cases of the police power; or, to put the same proposition in another form, the authority of the railroads to project their moving masses across thoroughfares must be taken to be subject to the implied limitation that it may be cut down whenever and so far as the safety of the public requires.

In accordance with the authorities cited herein, we hold that the Corporation Commission had the authority to issue Order 222509 and that such order does not violate due process under the Oklahoma Constitution, and does not violate due process and equal protection under the United States Constitution.

### IV

■ A final matter is that the Department of Transportation, in its answer brief, seeks reversal of that part of the Corporation Commission's order which requires the State to acquire the right of way from the railroad prior to the railroad's obligation to construct a crossing. The Department failed, however, to perfect an appeal on this point by filing a petition in error pursuant to Rule 1.18(a), Rules of Appellate Procedure, 12 O.S.1981, Ch. 15, App. 2. In addition, it failed to object or seek review of this matter before the Commission therefore precluding the issue from review. *State ex rel. Cartwright v. Oklahoma Natural Gas Co.*, 640 P.2d 1341 (Okl.1982).

The Department having failed to preserve its right to obtain affirmative relief by appeal may not be beneficially affected.

The order of the Corporation Commission is AFFIRMED.

BARNES, C.J., SIMMS, V.C.J., and HODGES, LAVENDER, DOOLIN, HARGRAVE and KAUGER, JJ., concur.

OPALA, J., concurs in part and dissents in part.